[Cite as *In re B.S.*, 2018-Ohio-614.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: B.S. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case No. 17CA018 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Holmes County Court
of Common Pleas, Probate and Juvenile
Division Case No. 14N198

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     February 14, 2018

APPEARANCES:

For Plaintiff-Appellee:

SEAN WARNER
164 E. Jackson St.
Millersburg, OH 44654

For Defendants-Appellants:

DAVID M. HUNTER
244 West Main St.
Loudonville, OH 44842
Attorney for Thomas Miller

MONICA L. MIYASHITA
P.O. Box 94
Orrville, OH 44667
Attorney for Opal Stevens

*Delaney, J.*

{¶1} Defendant-appellant Thomas Miller ("Father") appeals from the September 22, 2017 Judgment Entries of the Holmes County Court of Common Pleas, Probate and Juvenile Division, granting appellee Holmes County Department of Job and Family Services, Children Services Division ("Agency") permanent custody of his son B.S.

## FACTS AND PROCEDURAL HISTORY

{¶2} Father and Mother have one child together, B.S.[1] At the time this case arose, Mother and Father lived with B.S. and his siblings I.S. and John Doe in Holmes County, Ohio.

{¶3} On November 23, 2014, the Agency received a report that Mother threw a sippy cup at B.S., yelled at him, and threatened to "cut his hands off" if he did not behave. On December 8, 2014, the Agency filed a complaint alleging B.S. to be a neglected and abused child.

{¶4} B.S. and I.S. were found to be neglected as to Mother on March 3, 2015 and B.S. was found to be neglected as to Father on the same date.

{¶5} In January 2015, a case plan was adopted and Father was required to complete parenting classes and a psychological evaluation. He was later required to complete a domestic violence assessment and to attend a batterers' intervention program. Father was required to complete individual counseling and to maintain housing and employment.

{¶6} Father completed parenting classes at Anazao Community Partners.

---

[1] Mother appealed the trial court's decision to grant permanent custody of B.S. and I.S. to the Agency in In the matter of I.S., 5th Dist. Holmes No. 17CA019 and In the matter of B.S., 5th Dist. Holmes No. 17CA020.

{¶7}   Father had supervised visitation with B.S., which successfully progressed to more frequent unsupervised visitation.  B.S. was found to be bonded with Father; he enjoyed visitation with Father but also looked forward to returning to the home of his foster parents.  During the unsupervised visitation, a mark appeared on B.S.' chest which was concerning to the Agency.  Father's visits were again supervised, and then suspended altogether when the domestic violence allegation arose.

{¶8}   Father's psychological evaluation established, e.g., that he has an I.Q. of 73.  The Agency determined, as evidenced by the mark on B.S., that Father had a limited ability to retain what he learned while completing case plan services.  He was not able to reduce the risk to B.S. because although he did everything he was assigned to do, he couldn't process the information and apply it to prevent abuse to B.S.

{¶9}   B.S. exhibited behavioral issues and was assessed for trauma.  It was determined that he has been a victim of and a witness to domestic violence perpetrated by Father and Mother.

{¶10} I.S. and B.S. were in the temporary custody of the Agency and placed with the same foster family for 21 months when the Agency moved for permanent custody of both siblings on September 15, 2016.  The basis of the motion for permanent custody was the fact that the children were in the custody of the Agency for more than 12 months of a consecutive 22-month period.

{¶11} An evidentiary hearing was held in late June, 2017.  On September 22, 2017, the trial court awarded permanent custody of B.S. and I.S. to the Agency.

{¶12} Father now appeals from the trial court's decision granting permanent custody of B.S.

**ASSIGNMENT OF ERROR**

{¶13} "THE TRIAL COURT ERRED IN GRANTING JOB AND FAMILY SERVICES PERMANENT CUSTODY AS SAID DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AS REQUIRED BY R.C. 2151.414 AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

{¶14} Father argues the trial court erred in granting permanent custody of B.S. to the Agency. We disagree.

{¶15} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶16} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d

77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶17} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶18} Pursuant to R.C. 2151.414(B)(1), the trial court may grant permanent custody of a child to a movant if the court determines at the hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody **and** that any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's

parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. * * * *.

{¶19} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (e) is present before proceeding to a determination regarding the best interest of the child.

*R.C. 2151.414(B)(1)(d)*

{¶20} In the instant case, the trial court first considered the best interest of B.S., which we shall address infra.

{¶21} The trial court also concluded, however, that R.C. 2151.414(B)(1)(d) applied to B.S., to wit, he was in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two-month period. B.S. was placed in the temporary custody of the Agency on December 8, 2014, and temporary custody remained with the Agency continually until the evidentiary hearing at the end of June 2017, a period of thirty months.

{¶22} Father concedes the Agency established the requisite finding pursuant to R.C. 2151.414(B)(1)(d) but argues the trial court's findings regarding the best interest of B.S. are not supported by clear and convincing evidence.

*Best Interest of B.S.*

{¶23} Pursuant to R.C. 2151.414(D)(1), in determining the best interest of a child in a permanent custody proceedings, the court shall consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the
>
> child's parents, siblings, relatives, foster caregivers and out-of-home
>
> providers, and any other person who may significantly affect the
>
> child;
>
> (b) The wishes of the child, as expressed directly by the child
>
> or through the child's guardian ad litem, with due regard for the
>
> maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * * * ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.  * * * *.

{¶24} With regard to his interaction with Father, B.S. disclosed physical harm caused to him by Father and has witnessed domestic violence incidents between Father and Mother.  These incidents scared B.S. and he denied feeling safe with his biological parents.  B.S. was determined to suffer from posttraumatic stress disorder and a counselor opined that interactions with Father would continue to disrupt B.S.' mental health progress.

{¶25} Father also has mental-health issues of his own.  A psychological evaluation of Father determined he is at risk for physical abuse or neglect of children.  Although this evaluation was slightly more than two years old, the psychologist's conclusions were premised in part upon Father's intellectual abilities.  His I.Q. indicates he is in the borderline range between very low average intelligence and mental retardation.  This conclusion is significant because although Father is capable of completing case plan services, his ability to retain the information has not been demonstrated.

{¶26} B.S. is presently placed in a foster home with his sister I.S. in which he is doing well. Evidence showed the idea of not returning to the foster home after visits with Father was distressing to B.S.  B.S. and I.S. have a close sibling bond and B.S. seeks out I.S. for support, with I.S. being very protective of him.  The foster parents expressed willingness to adopt both siblings and evidence showed B.S. and I.S. were bonded with the foster parents and other children in the household.

{¶27} The worker who supervised Father's visitation with B.S. reported an incident in which B.S. climbed onto Father's shoulders with his (clothed) "privates" in Father's face and "move[d] back and forth rapidly."  The worker had to intervene to tell Father this behavior was inappropriate.  Father was convicted of gross sexual imposition and is a registered sex offender.  At the time of the evidentiary hearing, Father had been indicted upon a charge of domestic violence as a felony of the fourth degree, in which B.S. was the victim.

{¶28} The guardian ad litem concluded it was in the best interest of B.S. to grant permanent custody to the Agency.  Over the course of a year, B.S. suffered bumps, bruises, and a broken arm while in Father's care.  The broken arm allegedly occurred when B.S. fell from a swing and Father did not immediately seek medical treatment for the child.

{¶29} As noted supra, at the time of the evidentiary hearing B.S. had been in the temporary custody of the Agency for over 30 months.

{¶30} B.S. needs and deserves legally secure permanent placement, which he would find upon an award of permanent custody of the Agency resulting in possible adoption.  The record is devoid of any other option short of permanent custody which

would achieve this result. No family members have come forward seeking placement of B.S., and we agree with the trial court that neither biological parent will be able to provide a legally secure permanent placement. The parents were unable throughout the 30-month period of temporary custody to sufficiently remedy the conditions which led to removal of the children. While Father points out he has successfully followed his case plan, the evidence of his intellectual capacity supports the conclusion that he will not be able to apply what he has learned, and his intellectual capacity is not a factor which will change. We agree that the evidence demonstrates that any harm of severing the parental bond is outweighed by the benefits of permanency.

{¶31} Upon this record, we find the trial court's decision that it was in the best interests of B.S. to be placed in the permanent custody of the Agency is supported by clear and convincing evidence and is not against the manifest weight of the evidence.

{¶32} Father's sole assignment of error is overruled.

**CONCLUSION**

{¶33} Father's assignment of error is overruled and the judgment of the Holmes County Court of Common Pleas, Probate and Juvenile Divisions is affirmed.

By:  Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.